ORD. PET.                    Wendover *vs.* The City of Lexington.

Case 32.                    APPEAL FROM FAYETTE CIRCUIT.

1. The Legislature has power to give to cities within the State the power to tax, for revenue purposes, lottery offices for the sale of lottery tickets within their limits, although the lotteries may have been authorized by the Legislature, provided no bonus was given for the lottery privilege.

2. A franchise for which a bonus has been paid may not be taxed by the Legislature or its authority, so as to impair its value.

Case stated.

Wendover sued the city of Lexington to recover back $350 paid to the city between 1848 and 1853, as tax upon his office for the sale of lottery tickets in the city, which he alleged he had been compelled illegally to pay by an act of the Legislature and an ordinance of the city. That the lottery in which tickets were sold was authorized by an act of the Legislature passed in 1838, for the benefit of the town of Frankfort, and the scheme or privilege sold to Gregory & Co. The Circuit Court decided against the claim of the petitioner, and he has appealed to this court.

*R. Pindell,* for appellant—

1. The power to impose the tax on lottery offices is asserted under the act of 26th February, 1847, (*Session Acts, page* 265,) for amending the charter of the city of Lexington, from which the right to pass the ordinance is attempted to be derived to impose a tax of $50 per annum, for the sale of lottery tickets.

2. The act authorizes the city to license insurance agencies, and to tax them not exceeding $100 per annum, and in the same section lottery ticket agents, but without any power to impose a tax or require any sum for the license. It is a mere authority to license, and surely this does not carry with it the power to tax or demand a sum of money for the license. Many things may be done under city governments under a

license which may not be done without license, for which no tax is exacted. It is not admitted that the grant of a power to license includes a power to demand a tax for the license, which is the only hypothesis upon which the judgment of the Circuit Court can be sustained.

3. The power to tax, and taxation of a lottery privilege, impairs the grant of that privilege or its exercise. Without denying the right of the Legislature to levy a general tax on a franchise previously granted, it is denied that a special tax on a previously granted franchise can be imposed. (3 *Howard*, 133 ; 6 *Gill*, 288.)

The right of the Legislature to invest any corporation with power to tax at discretion a franchise previously granted, is denied. This power might be so exercised as to destroy the franchise and render it useless.. In this case the power to refuse a license, or tax at discretion the franchise granted, is asserted, either of which may destroy or materially impair the franchise.

4. The law relied upon as authority to impose the tax, was repealed by the act of 1850, and never re-enacted until December, 1851. (*Session Acts*, 1851–2, *page* 435.) The act of 1850 repealed all acts on the subject, and omitted to re-enact the provision for licensing lottery offices. The appellant should have had judgment for the tax of that year.

5. There was no answer filed to plaintiff's claim, no denial of his right, no demurrer, and he should have had judgment.

6. There was no trial by a jury, nor was there any order showing that a jury was dispensed with.

The main question is upon the legality of the tax. If the license and tax are both constitutional, it is a very convenient mode of getting clear of an obnoxious grant. Every road may be taxed which transports passengers, so as to be rendered unprofitable.

*J. T. Hogan*, for appellee—

The decision in this case involves the right of the city of Lexington to tax every lottery agent or keeper of a lottery office, selling lottery tickets within the city. The city passed an ordinance on the 1st of July, 1847, in pursuance of an amendment of the city charter of Lexington, approved on the 26th of February, 1847, (*Session Acts of* 1846–7, *page* 265,) which amendment authorizes the mayor and council of Lexington to require all lottery offices and agencies within the limits of said city to take out license, and also to demand and receive for each license a sum not exceeding $100.

The plaintiff's claim is based upon the session act of the 1st February, 1838, passed for the benefit of the city school of Frankfort, authorizing a lottery, and an amendment to the said act, approved February 16th, 1839, (*Session Acts of* 1838–9, *page* 196,) authorizing the managers to dispose of the lottery referred to to any person who shall give bond, &c. The effect of the first act is to authorize a lottery, and the amendment removes the liability of the managers appointed by the state after they have disposed of the scheme according to the provisions of the amendment.

If it be contended that the authority to sell lottery tickets under this act be a contract between the state and the persons selling under this authority, there is nothing in this view of it to affect the validity of the ordinance, or the amendment of the charter under which it was passed. On this point the case of *Cheyney vs. Hoozier*, 9 *B. Monroe*, 338, is referred to. It is there laid down, that the Legislature have the constitutional power to confer taxing power upon local corporations. On page 340 of the last book, it is said in substance that the clauses of the federal and state constitutions prohibiting the impairing of contracts, may secure the inviolability of grants, but do not affect their construction, nor the ascertainment of rights

held under them; again, at page 343, same book, the **WENDOVER**
idea is farther discussed.   Other authorities to the   *vs.*
same purport might be cited.   These are deemed suf-   **CITY LEXINGTON**
ficient.

Judge CRENSHAW delivered the opinion of the Court—   January 31.

The first question  presented for our  consideration
is, whether the mayor and council of the city of Lex-
ington have authority, by virtue of an act approved
26th of February, 1847, to impose a tax for licenses
issued by them for lottery offices and agencies with-
in the city.   That the act confers such authority, no
one can  doubt, as it appears to us after a  careful
reading of the first section.   We will quote so much
of it as contains the authority:

"The mayor and council of the city of Lexington
shall be, and they are hereby authorized to require
all insurance companies doing business as such, with-
in the limits of said city, and also, *all lottery offices, and
agencies* within the limits of said city, to take out li-
cense; and *they are authorized to prescribe, by ordinance,
the terms on which such licenses shall be granted,* and to
require the same to be renewed annually, and *may de-
mand and receive for each license, so issued, a sum not ex-
ceeding one hundred dollars.*"   It is so manifest that the
authority which is denied, is in fact  conferred, that
comment can make it no plainer.   The counsel, we
think, gave the act an inattentive reading, and of
this we are persuaded he will be satisfied by a re-ex-
amination of it.

But it is contended that conceding the authority to
impose a tax for the license which was granted in this
case, the  Legislature had  no power to  confer such
authority, and that the act is so  far unconstitutional
and void.

By an act approved February 1st, 1838, a lottery
was authorized for the benefit of the city school in
the town of Frankfort, and power was given to the
managers thereof, to sell and dispose of the scheme
to any person or persons who would comply with cer-

tain requisitions contained in the act. The scheme was afterwards, to-wit: in 1841, sold to Walter Gregory, who complied with said requisitions.

Although the agreement of the counsel which is made a part of the record, does not state that Wendover, the agent of Gregory, kept an office in Lexington, and sold tickets *there*, yet the agreement states an ordinance of the city, passed in July, 1848, requiring him to pay $50 per annum as a tax for selling tickets, and presents as the only question, the legality and constitutionality of the ordinance; and in the argument no objection is made to the ordinance, on the ground that there was no lottery office or agency in the city. We take it therefore to be conceded that an agency was established within the city, and that the tickets which are admitted to have been sold were sold therein.

Had then the Legislature the power to confer authority on the city, to require a license to be taken out by the agent to vend lottery tickets within the city, and to impose a tax therefor not exceeding $100 per annum?

When the act of 1838, *supra,* was passed, authorizing the lottery scheme, no *bonus* was demanded for the privilege, nor was any restriction imposed upon the Legislature in regard to any tax thereon in future. The franchise was esteemed a valuable one, else it would never have been sought. The Legislature had the unquestionable right to require a bonus therefor, at the time she made the grant, but not having done so, and having placed upon herself no restrictions, she had a right thereafter to levy a tax upon the franchise or to authorize it to be done by the city of Lexington, for the privilege of vending tickets therein. In the case of the Louisville and Portland Canal Company vs. Commonwealth, this court say that, "the right of taxation is a sovereign right, and should never be regarded as surrendered, limited, or restricted in the grant of a charter, or creation of a corporation, unless there be express terms of surrender, limi-

tation or restriction." It is true, as contended by the plaintiff's counsel, that at the time Gregory made his purchase of the scheme, no tax had been authorized to be levied upon the franchise ; but we do not admit that the privilege of selling tickets is destroyed, or may be destroyed by the exercise of the taxing power, or that the constitutional rights of Gregory are thereby violated. The tax imposed by the city is only one-half of what she was authorized to levy, and it does not appear to us that the whole sum authorized by the Legislature to be levied is unreasonable, exorbitant, or oppressive. We think there is no danger in any case like this, where the object is to raise revenue, that the Legislature by herself, or by her authority conferred upon another, would deem it sound policy to levy a tax so exorbitant as to destroy, or materially impair a franchise which she has granted. To do so would be to frustrate the very object in view. It would deter all from asking the grant of chartered privileges, and drive from the country sources of no inconsiderable revenue. Nothing unreasonable, as it seems to us, has been done or authorized to be done, in the present instance.

If in any case of a franchise, which the Legislature has thought, or may think proper to grant, she should afterwards deem it expedient to transcend the bounds of reason and propriety in taxing it, so as to defeat or materially impair the franchise, a case would be presented very different from the one under consideration ; and what might be our opinion as to her right to *abuse* an unquestionable power, it would be premature now to express. But such a state of case is hardly to be supposed, and we presume will not arise.

*2. A franchise for which a bonus has been paid may not be taxed by the Legislature or its authority, so as to impair its value.*

Every man is presumed to know the law, and Gregory, when he purchased the scheme for a lottery, ought to have known that the Legislature, having required no bonus for the franchise, nor put herself under any restrictions in regard to her right to tax it, or authorize it to be taxed, retained the power of doing so whenever she might esteem it expedient.

WENDOVER
*vs.*
CITY LEXINGTON

There is nothing in the case of *Gordon, &c. vs. The Appeal Tax Court*, 3 *Howard*, 133, to which we have been referred, which contravenes the principle of this opinion. On the contrary, we look upon the principles of that case as sustaining the principle which we have laid down. It is decided in that case that a franchise is not taxable as such, if a price has been paid for it which the Legislature accepted. And that is our own opinion. If at the time of the grant of a franchise, a price is stipulated and paid for it, there is an agreement or contract made which the Legislature would have no right thereafter to impair; for she is expressly prohibited by the constitution from passing any law impairing the obligation of contracts. When the Legislature grants a franchise, without making any agreement with the grantee or grantees as to price or taxation, she has made no contract upon the subject of price or taxation, and there is no contract to impair by subsequently levying a tax upon the franchise. We conclude therefore that the mayor and council of the city of Lexington had the power, under the authority of the Legislature, to impose the tax complained of, and that in so doing there has been no violation of the constitution.

It is suggested by the counsel of the plaintiff, that the law authorizing the tax was repealed by the new charter for the city, passed in 1850. We think the counsel is mistaken. The title of the act is: "An act to reduce into one, *amend*, and digest the acts and amendatory acts incorporating the city of Lexington." It does not contain, as far as we have discovered, any repealing clause, and there is nothing inconsistent with the original act conferring authority to impose the tax.

Judgment affirmed.